Opinion delivered May 11, 1889.

---

No. 6378.

## LEM MANN *v.* THE STATE.

BURGLARY—EVIDENCE.—Two of the articles taken from the burglarized house are described in the indictment as a "Canadian quarter of a dollar coin and a Mexican quarter of a dollar coin." Two such coins were produced in evidence by the State, and the court admitted the testimony of an officer that they looked like coins he got from unknown parties after the arrest of defendant; that he did not know from whom he got them, and that he did not get them, nor coins like them, from defendant. *Held* that this evidence in no way traced the said coins to the possession of defendant, and was erroneously admitted.

APPEAL from the District Court of Brown. Tried below before the Hon. J. W. Timmins.

The conviction was for burglary, and the penalty assessed by the verdict was a term of two years in the penitentiary.

S. J. Dowty was the first witness for the State. He testified, in substance, that he lived in the town of Brownwood, Brown county, Texas, in which town he followed the business of a retail liquor dealer, his drinking establishment being known as the Little Elephant saloon. He had known the defendant two or three years, during which period the defendant, at different times, had been in his employment. The witness's bar tender was sick on the night of July 20, 1888, in consequence of which the witness was on watch that night. The defendant came into the witness's saloon about ten o'clock on that night, and called for a small glass of beer, to cost five cents, tendering a dollar in payment. Witness said to him: "Damn it, give me some small change." He replied that the dollar was all the money he had, and that he was going that night to either Coleman or Ballinger—the witness could not now say which. Witness closed his saloon between eleven and twelve o'clock that night, and went home, seeing no more of defendant. He opened his saloon quite early on the next morning, observing nothing unusual until he discovered that the catch of the cash drawer was not in place. His first impression was that he had left the cash drawer open when he left on the night before. Closer inspection, however, showed that the drawer had been pried open and the lock broken. Witness then examined the contents of the drawer, and from a glass kept in that drawer as a separate place of deposit for odd coins, he missed seven peculiar coins, consisting of two Mexican quarter dollars, two Canadian quarter dollars, two Mexican half dollars—one being of the new and one of the old issue—and one old worn American half dollar of the coinage of 1834. This latter had a hole in it. One each of the Mexican and Canadian quarters was much worn—the Mexican quarter particularly on one side. One each of the Mexican and Canadian quarters was comparatively new, though the letters "n" and "t" in the word "cents" on the new Canadian quarter were very dim. The Mexican half dollar and the Mexican quarter and Canadian quarter now in evidence, if not the same, were exact counterparts of similar coins taken from the witness's money drawer, but witness

could not positively identify them as the same. Such coins as those taken from witness's drawer were very scarce. The witness also missed from his saloon one of the only two pint picnic whisky flasks that he had in his saloon. A demijohn which contained "Anderson county" whisky, and which was kept at a particular place under the counter, and which was at that particular place when witness closed his saloon on the previous night, was moved to another place near by. After examining the front part of the saloon, the witness went to the rear end and found the back window raised and the perpendicular iron bars pried far enough apart to admit the passage of a man's body. The stick with which the bars were pried apart, and which bore the marks of the bars, was found on the ground, outside of the house, and immediately under the window. The said saloon was entered in the night time, without the knowledge or consent of the witness, in Brown county, Texas, on July 20, 1888.

On his cross examination, the witness said that he did not know who entered his said saloon on the said night and took the said coins and whisky flask. The last time he saw the defendant on that night was when he came into the saloon as stated and called for a glass of beer. He then said that he was going to Coleman or Ballinger on the passenger train that night. Witness understood him to say that the dollar he tendered in payment of the glass of beer was the only money he had, but he may possibly have said that it was the smallest change he had. Picnic flasks similar to that taken from witness's saloon were in common use, and were generally kept in stock by retail liquor dealers.

Ollie Phillips testified, for the State, that he was bar tender at the Little Elephant saloon, in Brownwood, at the time of the burglary in July, 1888. The witness had often seen and handled the coins said to have been taken from the cash drawer of that saloon at the time of the burglary. He described them as did the witness Dowty. The witness closely observed the Canadian coins, because for a time he designed having them made into cuff buttons, and did not because, one being worn and the other intact, they did not match well. The coins now exhibited to witness were coins exactly similar to those taken from the Little Elephant saloon at the time of the burglary, the letters "n" and "t" in the word "cents" on the Canadian quarter showing dimly, as they did on the Canadian quarter that was

taken. No person had the consent of the witness to enter that saloon on that night. The witness was sick and was not at the saloon on the night of the burglary, and could not say at what time the saloon was closed. Witness could not positively identify the coins in evidence as those taken, but they were identical in appearance.

R. H. Jeffries testified, for the State, that, about eleven o'clock on the night of the burglary, defendant came into his saloon in Brownwood and took a drink and went out. Witness did not see him again on that night. It was nothing unusual to see the defendant on the streets of Brownwood at eleven o'clock at night.

Bud Smith testified, for the State, that between eleven and twelve o'clock on the night of the burglary he saw the defendant sitting in front of The Office saloon, in Brownwood. After sitting there a while, defendant passed around the corner of said saloon and went toward the rear of the Little Elephant saloon. Witness saw him no more that night.

On cross examination, this witness said that it was not unusual for defendant to be on the streets of Brownwood at eleven o'clock at night. A public street passed the rear end of the Little Elephant saloon, and defendant was traveling that road when witness last saw him that night.

D. G. Lindsey testified, for the State, that he lived in Brownwood and had known defendant for several years. He went to the rear of the Little Elephant saloon on the morning after the burglary, and examined the window through which the burglar entered the house. The perpendicular bars were pried far enough apart to admit the passage of a man's body, and on the ground under the said window lay a stick, which, from marks on it, showed to be the instrument used in pressing the bars apart. Witness also saw foot tracks under and about the window, and on the outside and the inside of the fence at a point near the road where the burglar evidently crossed the said fence. He recognized those tracks as the tracks of the defendant. He recognized them from the fact that, having suffered frequent loss by theft, and suspecting the defendant as the thief, he had often examined tracks made by him, and by that means became familiar with them. At that time the defendant was wearing a shoe, the sole of which showed to be worn on one side, and the tracks about the window and fence of the Little Elephant saloon showed to have been made by such a shoe. A

small quantity of dirt was found on the window sill, and on the fence, which dirt was evidently left there by the burglar in his passage into or out of the yard and house. On his cross examination the witness said that he would not absolutely swear that the said tracks were made by defendant, but, speaking upon belief and knowledge of his track he was satisfied that they were.

Nat Royall testified, for the State, that he slept at the depot of the Gulf, Colorado and Santa Fe Railway on the night of the burglary. Some time after the passenger train passed, bound for Coleman, the defendant awakened witness and asked him to take a drink. He then handed witness a pint picnic flask, from which the witness took a drink of whisky which tasted to him like the "Anderson County" whisky sold over the bar at the Little Elephant saloon. Defendant then left and witness saw him no more on that night. On his cross examination the witness said that he would not undertake to say that the drink of whisky given him by the defendant on the said night was a part of the whisky kept in stock at the Little Elephant saloon. It tasted like it. Witness did not know whether or not other saloons sold the same kind of whisky.

W. Harrison testified, for the State, that he was in business in the town of Coleman, in July, 1888. About eight o'clock on the morning of July 21, 1888,—the morning after the alleged burglary,—the defendant came into witness's store and made a small purchase, handing him in payment an old worn American half dollar with a hole in it. Witness declined to receive the coin for more than thirty-five cents, and, defendant refusing to pass it at that valuation, took it back. Witness never afterwards saw that particular half dollar.

J. C. Jones testified, for the State, that he lived in Coleman, and was deputy sheriff of Coleman county at the time of the burglary of the Little Elephant saloon in Brownwood. Witness received a telephone early on the morning after the burglary, from Brownwood, directing him to arrest defendant. He found the defendant going out of the back door of a saloon with a pitcher of beer in his hands, and arrested him. Defendant asked to be permitted to take the pitcher of beer to a cabin and deliver it to a party who had sent him for it. Witness accompanied him to the cabin, and defendant delivered the beer to a negro woman. The woman asked him, "where is the change." Defendant offered her a Canadian quarter, which

the woman at first declined to take, but finally accepted. Witness then jailed defendant. Witness soon received another telephone to look for certain peculiar coins, such as one described in the indictment. The Mexican half dollar, the Mexican quarter and the Canadian quarter now exhibited to witness are similar in every respect to coins obtained by witness and delivered by him to Sheriff Perry of Brown county. He got the Mexican half dollar from C. N. McFarland, but he could not say from whom he got either the Mexican or Canadian quarter. He did not, however, get either of the coins in evidence from defendant, nor did he get from defendant any coins like those in evidence.

C. N. McFarland testified, for the State, that he lived in the town of Coleman, where he kept a general store. Defendant came into his store early on the morning after the burglary in Brownwood, and bought a can of something for his breakfast, and in payment of the said purchase handed the witness a silver coin, witness giving him change. Witness was quite busy on that morning and paid no further attention to the said coin than to note its denomination. Later in the day deputy sheriff Jones came to witness's store and asked witness if he received any money from defendant on that morning. Witness replied in the affirmative and took from his pocket the money he had taken in on that morning. Among the ten or a dozen coins taken in, the witness found a Mexican half which he did not observe when paid to him. He gave that coin to Mr. Jones in exchange for an American half. Had he noticed said coin was Mexican money when he received it, the witness would not have taken it at the value of fifty cents. Witness could not undertake to say that the said half dollar was paid him by the defendant, nor could he now say that the coin paid him by defendant was a half dollar piece.

The State closed.

The defense moved the court at this time to strike out the testimony of J. C. Jones as to the Mexican and Canadian quarters, and that of McFarland as to the half dollar, upon the ground that the State had failed to connect the defendant with the said coins. The court overruled the motion, and the defense introduced an agreement with the State, as follows: "It is agreed that N. B. Fisk, if here, would swear that on the evening of the burglary he paid the defendant some money, and that among other coins there was a Mexican quarter and a

Mexican half dollar, and he believes that on an evening or two before he paid defendant a Canadian quarter."

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. That portion of the testimony of the witness J. C. Jones relating to the Canadian quarter of a dollar coin, and a Mexican quarter of a dollar coin, which he obtained from unknown parties, was irrelevant, said coins in no manner being traced to the defendant, and the court erred in refusing to exclude said testimony upon the motion of the defendant. Under the facts of this case, this illegal evidence may have influenced the verdict of the jury to the prejudice of the defendant; and because it was improperly permitted to go to the jury, the judgment is reversed and the cause is remanded. Other testimony objected to by the defendant was relevant and properly admitted.

*Reversed and remanded.*